**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BYRON CHAPMAN,
              *Plaintiff-Appellee,*

v.

PIER 1 IMPORTS (U.S.) INC., dba
PIER 1 IMPORTS #1132,
              *Defendant-Appellant.*

No. 07-16326

D.C. No.
CV-04-01339-LKK

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, District Judge, Presiding

Argued and Submitted
March 23, 2010—San Francisco, California

Filed January 7, 2011

Before: Alex Kozinski, Chief Judge, Mary M. Schroeder,
Andrew J. Kleinfeld, Barry G. Silverman,
Kim McLane Wardlaw, Richard A. Paez, Marsha S. Berzon,
Johnnie B. Rawlinson, Richard R. Clifton,
Milan D. Smith, Jr. and N. Randy Smith, Circuit Judges.

Opinion by Judge Wardlaw;
Concurrence by Judge N.R. Smith

439

## COUNSEL

Laura M. Franze (argued) and Richard Cortez, Jr., Hunton & Williams LLP, Dallas, Texas, and Roland M. Juarez, Hunton & Williams LLP, Los Angeles, California, for the appellant.

Lynn Hubbard III (argued) and Scottlynn J. Hubbard IV (argued) of the Law Offices of Lynn Hubbard (Chico, California) for the appellee.

Thomas E. Perez, Samuel Bagenstos (argued), Jessica Dunsay Silver, and Marie K. McElderry of the United States Department of Justice (Washington, D.C.) for amicus the United States.

## OPINION

WARDLAW, Circuit Judge:

Byron Chapman is unable to walk unassisted, and he requires the use of a motorized wheelchair when traveling in public. In July 2004, Chapman sued a Pier 1 Imports store ("Pier One" or "Store") in Vacaville, California, alleging that some of the Store's architectural features denied him full and equal enjoyment of the premises in violation of the Americans with Disabilities Act ("ADA"). Chapman requested an injunction requiring the Store to remove the barriers he personally encountered during his visits to the Store that deprived him of full and equal enjoyment because of his wheelchair confinement, as well as barriers that he did not personally encounter

but that might impede his access during future visits due to his disability. Chapman also requested monetary damages pursuant to provisions of California law. During discovery, Chapman testified that he was not deterred by the alleged ADA violations; rather, Chapman freely acknowledged that he actually intends to return to the Store, which is located near his home and offers products he finds desirable.

Chapman's complaint provided a list of the architectural barriers existing at the Store, "to the extent known" to him, some of which he alleged that he had personally encountered.[1] More than one year after the complaint was filed, and two months before the close of discovery, Chapman submitted an additional report compiled by his expert, Joe Card. The Card Report identified thirty alleged ADA and CBC violations at the Store, some of which were listed in the complaint, others of which were new. The parties cross-moved for summary judgment. Chapman's motion papers sought judgment as to only eleven of the alleged barriers, some of which had been listed in his complaint and some of which were identified only in the Card Report. The Store moved for summary judgment on the grounds that Chapman lacks standing and that the asserted barriers were not barriers as a matter of law or had been remedied.

The district court granted Pier One's motion as to numerous challenged barriers, concluding either that Chapman had failed to cite any applicable ADA regulation or that the barrier Chapman identified no longer existed. The court considered each of Chapman's eleven claims, including some that were raised only in the Card Report, finding that Chapman disclosed the violations in sufficient time to permit Pier One to address them in the context of its summary judgment motion. The court granted summary judgment to Chapman as to seven

---

[1]Attached as Exhibit A to the complaint was an "Accessibility Survey," which listed purported ADA and California Building Code ("CBC") violations at the Store.

of the barriers listed solely in the Card Report. The parties later jointly stipulated to entry of final judgment, subject to Pier One's reservation of the right to appeal the grant of summary judgment to Chapman and the denial of its motion to strike the Card Report.

Pier One timely appealed, challenging, among other things, the district court's conclusion that Chapman had standing to seek an injunction as to barriers he did not personally encounter. A three-judge panel of our court agreed with Pier One, concluding that Chapman lacked Article III standing as to barriers he had not personally encountered, because they did not deter him from returning to the Store. *See Chapman v. Pier 1 Imports (U.S.), Inc.*, 571 F.3d 853 (9th Cir. 2009) (withdrawn). We vacated the panel's decision after a majority of our court's non-recused active judges voted to rehear the appeal en banc to examine the Article III standing doctrine in the context of actions for injunctive relief under the ADA.

We now clarify that when an ADA plaintiff has suffered an injury-in-fact by encountering a barrier that deprives him of full and equal enjoyment of the facility due to his particular disability, he has standing to sue for injunctive relief as to that barrier and other barriers related to his disability, even if he is not deterred from returning to the public accommodation at issue. First, we hold that an ADA plaintiff can establish standing to sue for injunctive relief either by demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility. Second, we hold that an ADA plaintiff who establishes standing as to encountered barriers may also sue for injunctive relief as to unencountered barriers related to his disability. Here, however, Chapman has failed to allege and prove the required elements of Article III standing to support his claim for injunctive relief under the ADA. Specifically, he has not alleged or proven that he personally suffered discrimination as defined by the ADA as to encountered barriers on account of his disability. We therefore vacate the district court's grant of summary judg-

ment, and remand with instructions to dismiss Chapman's ADA claim for lack of jurisdiction and for further proceedings consistent with this opinion.

## I.

The ADA was enacted "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(2). Its passage was premised on Congress's finding that discrimination against the disabled is "most often the product, not of invidious animus, but rather of thoughtlessness and indifference," of "benign neglect," and of "apathetic attitudes rather than affirmative animus."[2] *Alexander v. Choate*, 469 U.S. 287, 295-96 (1985). The concept of "discrimination" under the ADA does not extend only to obviously exclusionary conduct — such as a sign stating that persons with disabilities are unwelcome or an obstacle course leading to a store's entrance. Rather, the ADA proscribes more subtle forms of discrimination — such as difficult-to-navigate restrooms and hard-to-open doors — that interfere with disabled individuals' "full and equal enjoyment" of places of public accommodation. 42 U.S.C. § 12182(a); *see also PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674-75 (2001); *Alexander*, 469 U.S. at 295 (noting Congress's conclusion that "we can no longer tolerate the invisibility of the handicapped in America" (quoting 118 Cong. Rec. 525-26 (1972))).

As defined by the ADA, unlawful "discrimination" occurs when features of an accommodation

> subject an individual or class of individuals on the

---

[2]Although these findings supported the Rehabilitation Act of 1973, Pub. L. No. 93-112, 87 Stat. 355, "[t]he legislative history of the ADA indicates that Congress intended judicial interpretation of the Rehabilitation Act be incorporated by reference when interpreting the ADA." *Collings v. Longview Fibre Co.*, 63 F.3d 828, 832 n.3 (9th Cir. 1995).

basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

42 U.S.C. § 12182(b)(1)(A)(i). In the context of existing facilities, discrimination includes "a failure to remove architectural barriers . . . where such removal is readily achievable." *Id.* § 12182(b)(2)(A)(iv). In the case of newly constructed facilities, compliance with the ADA's antidiscrimination mandate requires that facilities be "readily accessible to and usable by individuals with disabilities." *Id.* § 12183(a)(1).

Whether a facility is "readily accessible" is defined, in part, by the ADA Accessibility Guidelines ("ADAAG"). *See* 28 C.F.R. § 36.406(a); 28 C.F.R. pt. 36, app. A; *Miller v. Cal. Speedway Corp.*, 536 F.3d 1020, 1024-25 (9th Cir. 2008) (describing the ADA's regulatory framework), *cert. denied*, 129 S. Ct. 1349 (2009). Promulgated by the Attorney General to "carry out the provisions" of the ADA, 42 U.S.C. § 12186(b), these guidelines "lay out the technical structural requirements of places of public accommodation." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1080-81 (9th Cir. 2004); *see also Indep. Living Res. v. Or. Arena Corp.*, 982 F. Supp. 698, 714 (D. Or. 1997) ("The regulations establish a national standard for minimum levels of accessibility in all new facilities."). The ADAAG provides the objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations. *See Pascuiti v. N.Y. Yankees*, 87 F. Supp. 2d 221, 225 (S.D.N.Y. 1999) (quoting a letter in which the Department of Justice stated that it "consider[ed] any element in a facility that does not meet or exceed the requirements set forth in the [ADAAG] to be a barrier to access"). We have held that "obedience to the spirit of the ADA" does not excuse noncompliance with the ADAAG's requirements. *See*

*Long v. Coast Resorts, Inc.*, 267 F.3d 918, 923 (9th Cir. 2001). The ADAAG's requirements are as precise as they are thorough, and the difference between compliance and non-compliance with the standard of full and equal enjoyment established by the ADA is often a matter of inches. *E.g.*, ADAAG § 4.16.4 (requiring grab bar behind water closets to be at least thirty-six inches long); *id*. § 4.19.6 ("Mirrors shall be mounted with the bottom edge of the reflecting surface no higher than 40 in (1015 mm) above the finish floor . . . .").

[1] Though its purpose is "sweeping," *PGA Tour*, 532 U.S. at 675, and its mandate "comprehensive," 42 U.S.C. § 12101(b)(1), the ADA's reach is not unlimited. Rather, as with other civil rights statutes, to invoke the jurisdiction of the federal courts, a disabled individual claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating his standing to sue at each stage of the litigation. *See* U.S. Const. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Fortyune*, 364 F.3d at 1081 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)). As the Supreme Court has stated, "It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirements imposed by Article III of the Constitution by alleging an actual case or controversy." *Lyons*, 461 U.S. at 101; *see also D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1036 (9th Cir. 2008) ("A party invoking federal jurisdiction has the burden of establishing that it has satisfied the 'case-or-controversy' requirement of Article III of the Constitution; standing is a 'core component' of that requirement." (quoting *Lujan*, 504 U.S. at 560)). Given these principles, we are also mindful that the "Supreme Court has instructed us to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.' " *Doran v. 7-Eleven, Inc*., 524 F.3d 1034, 1039 (9th Cir. 2008) (quoting *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)).

## II.

**[2]** Under the oft-repeated standing formulation, Chapman must demonstrate that he has suffered an injury-in-fact, that the injury is traceable to the Store's actions, and that the injury can be redressed by a favorable decision. *See Fortyune*, 364 F.3d at 1081. In addition, to establish standing to pursue injunctive relief, which is the only relief available to private plaintiffs under the ADA,[3] he must demonstrate a "real and immediate threat of repeated injury" in the future. *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). As the three-judge panel observed, the causation and redressability elements of standing are not at issue in this appeal. *Chapman*, 571 F.3d at 857. Therefore, our standing inquiry focuses on the legal standards governing whether Chapman has suffered an injury-in-fact and whether he has demonstrated a likelihood of future injury sufficient to support injunctive relief. The original panel concluded that Chapman did not suffer an injury-in-fact as to unencountered accessibility barriers because the barriers he did encounter did not deter him from returning to the Store. *Id.* at 854. This conclusion was a misapplication of the deterrent effect doctrine and reflected a misapprehension of its relationship to fundamental standing principles.

## A.

The existence of federal standing "often turns on the nature and source of the claim asserted." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). Accordingly, our standing analysis must focus on the nature and source of Chapman's claim — discrimination as defined by the ADA. Under the ADA, when a disabled person encounters an accessibility barrier violating

---

[3]42 U.S.C. § 12188(a)(1) affords private plaintiffs the remedies provided under the Civil Rights Act of 1964, 42 U.S.C. § 2000a-3(a). Damages may be awarded to aggrieved individuals when requested in suits brought by the Attorney General. *See id.* § 12188(b)(2)(B).

its provisions, it is not necessary for standing purposes that the barrier completely preclude the plaintiff from entering or from using a facility in any way. *See Doran*, 524 F.3d at 1041 n.4 (stating that the ADA "does not limit its antidiscrimination mandate to barriers that completely prohibit access"). Rather, the barrier need only interfere with the plaintiff's "full and equal enjoyment" of the facility. 42 U.S.C. § 12182(a). As we stated in *Doran*,

> Once a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts, and so he possesses standing under Article III . . . .

*Doran*, 524 F.3d at 1042 n.5.

**[3]** Of course, a "barrier" will only amount to such interference if it affects the plaintiff's full and equal enjoyment of the facility on account of his particular disability. Because the ADAAG establishes the technical standards required for "full and equal enjoyment," if a barrier violating these standards relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes "discrimination" under the ADA. That discrimination satisfies the "injury-in-fact" element of *Lujan*. As we have held, once a disabled plaintiff has encountered a barrier violating the ADA, "that plaintiff will have a 'personal stake in the outcome of the controversy' so long as his or her suit is limited to barriers related to that person's particular disability."[4] *Id.* at 1044.

---

[4]The concurrence fails to recognize that a plaintiff's standing to claim an ADA violation is necessarily linked to the nature of his disability. We recognize that an encountered barrier must interfere with the particular plaintiff's full and equal enjoyment of the facility, making his use of the

Following this principle, the original three-judge panel recognized that Chapman's initial encounter with accessibility barriers at the Store constituted an injury-in-fact.[5] The now withdrawn panel opinion stated, "It is clear that Chapman had standing to sue Pier 1 Imports for not complying with the ADA with respect to the . . . barriers he claimed to have encountered." *Chapman*, 571 F.3d at 857. Although encounters with the noncompliant barriers related to one's disability are sufficient to demonstrate an injury-in-fact for standing purposes, a plaintiff seeking injunctive relief must addition-

---

facility more difficult than a nondisabled individual's, to constitute an injury-in-fact, and that he is required to allege and prove that injury. Thus, a blind person would have standing to assert an ADA violation where a newly constructed multi-story facility has elevators lacking floor buttons in Braille, while Chapman, who we assume can see and press the floor buttons, would not. *See, e.g.*, ADAAG § 4.10.12(2) (requiring that "[a]ll control buttons shall be designated by Braille and by raised standard alphabet characters for letters, arabic characters for numerals, or standard symbols"). Where the barrier is related to the particular plaintiff's disability, however, an encounter with the barrier necessarily injures the plaintiff by depriving him of full and equal enjoyment of the facility. *See, e.g.*, *Doran*, 524 F.3d at 1044 n.7 (stating that a wheelchair-bound plaintiff cannot challenge all accessibility barriers, but only those affecting mobility); *accord Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000) (finding that a disabled plaintiff who was not blind "is not 'among the injured' with regard to ADA violations in the building that do not affect the blind," and that he therefore did not have standing as to those violations).

[5]That opinion's author now disagrees with this well-established principle, but it is far from clear what the concurrence actually would require instead, given the ADA's structure. A disabled person who encounters a "barrier," *i.e.*, an architectural feature that fails to comply with an ADAAG standard relating to his disability, suffers unlawful discrimination as defined by the ADA. 42 U.S.C. § 12182(b)(1)(A)(i). Indeed, by "establish[ing] a national standard for minimum levels of accessability in all new facilities," *Indep. Living Res.*, 982 F. Supp. at 714, the ADAAG removes the risk of vexatious litigation that a more subjective test would create. Those responsible for new construction are on notice that if they comply with the ADAAG's objectively measurable requirements, they will be free from suit by a person who has a particular disability related to that requirement.

ally demonstrate "a sufficient likelihood that he will again be wronged in a similar way." *Lyons*, 461 U.S. at 111. That is, he must establish a "real and immediate threat of repeated injury." *Id.* at 102 (quoting *O'Shea*, 414 U.S. at 496). For instance, in *Fortyune*, a quadriplegic plaintiff sued to enjoin a movie theater's ongoing seating policy that failed to ensure that wheelchair-bound patrons could sit next to their companions or aides during sold-out shows. *Fortyune*, 364 F.3d at 1078-79.

Fortyune required both a wheelchair and an aide to attend movies at the theater. Thus, to have full and equal access to the movie theater he needed to have available a "companion seat" for his aide (in his case, his wife) next to which he could situate his wheelchair. He suffered an injury-in-fact when he and his wife attempted to see an AMC movie, but were prevented from doing so, because the companion seats were occupied by nondisabled patrons whom the manager refused to move on the basis of a company-wide policy governing the use of wheelchair companion seats at sold-out screenings. We noted that, while "past wrongs do not in themselves amount to [a] real and immediate threat of injury necessary to make out a case or controversy, past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." *Id.* at 1081 (internal quotation marks and citation omitted) (alteration in original). Because Fortyune attended three or four movies per week with a companion, *id.* at 1079, and the theater's discriminatory seating policy was ongoing, we concluded that Fortyune established "a 'real and immediate threat' that the injury will be repeated" sufficient to permit him to pursue injunctive relief. *Id.* at 1081; *see also id.* at 1082 ("[T]he possibility of his injury recurring cannot be said to be so remote as to preclude standing."); *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002) ("[A] plaintiff who is threatened with harm in the future because of existing . . . noncompliance with the ADA suffers 'imminent injury.' ").

Other circuits also recognize that an ADA plaintiff demonstrates a sufficient likelihood of future harm to establish standing to sue for an injunction when he intends to return to a noncompliant place of public accommodation where he will likely suffer repeated injury. In *Disabled Americans for Equal Access, Inc. v. Ferries Del Caribe, Inc.*, 405 F.3d 60 (1st Cir. 2005), a wheelchair-bound individual sued the operator of a cruise ship, alleging that he was subjected to discrimination and was likely to suffer discrimination in the future because accessibility barriers on the defendant's vessel denied him full and equal enjoyment of its goods, services, and other privileges. *Id.* at 62-63. The First Circuit concluded that the plaintiff had standing to pursue injunctive relief, noting that the plaintiff alleged an intent to return to the vessel notwithstanding its noncompliance with the ADA, and that unless the barriers were removed, his ability to use the accommodations would be compromised and his safety would be endangered. *Id.* at 64-65.

Similarly, in *Camarillo v. Carrols Corp.*, 518 F.3d 153 (2d Cir. 2008), a blind woman sued the owner of several fast-food restaurants, alleging that she was subjected to unlawful discrimination under the ADA when the restaurants failed to communicate their menu items to her effectively. *Id.* at 154, 156. The Second Circuit held that Camarillo had standing to sue for injunctive relief because "(1) she has alleged past injury under the ADA (namely, defendants' discriminatory failure to ensure effective communication of their menu items); (2) it is reasonable to infer from her complaint that this discriminatory treatment will continue; and (3) it is also reasonable to infer, based on the past frequency of her visits and the proximity of defendants' restaurants to her home, that Camarillo intends to return to these restaurants in the future." *Id.* at 158.

**[4]** These opinions reflect first principles: It is well settled that a plaintiff need not "await the consummation of threatened injury to obtain prospective relief." *Farmer v. Brennan*,

511 U.S. 825, 845 (1994) (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923)); *see also Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("It is the role of courts to provide relief to claimants . . . who have suffered, or will imminently suffer, actual harm . . . ."). Rather than contending with discriminatory barriers due to his related disability when he returns to a public accommodation, a plaintiff may seek a judicial order requiring their removal. Article III, however, requires a sufficient showing of likely injury in the future related to the plaintiff's disability to ensure that injunctive relief will vindicate the rights of the particular plaintiff rather than the rights of third parties.[6]

## B.

Demonstrating an intent to return to a noncompliant accommodation is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief. A disabled individual also suffers a cognizable injury if he is deterred from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there.

We first recognized that the "deterrent effect doctrine" may confer standing in *Pickern*. There, the plaintiff had encountered accessibility barriers on past visits to the Paradise market, which deterred him from returning to the market even though he preferred to shop there. *Pickern*, 293 F.3d at 1135. Because the plaintiff's initial encounter with the barriers had occurred outside the relevant statute of limitations, the injury inflicted by that encounter did not confer standing to sue. We

---

[6]*See, e.g.*, *Hoepfl v. Barlow*, 906 F. Supp. 317, 322-23 (E.D. Va. 1995) (concluding plaintiff lacked standing to sue for injunctive relief where she challenged a doctor's refusal to treat her but was no longer in need of medical services and she had moved to another state); *Atakpa v. Perimeter OB-GYN Assocs.*, 912 F. Supp. 1566, 1573-74 (N.D. Ga. 1994) (concluding plaintiff lacked standing where she challenged discriminatory prenatal HIV testing and failed to demonstrate that she would ever seek services from the health provider in the future).

nevertheless concluded that the plaintiff had Article III standing because "a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered 'actual injury'" for standing purposes. *Id.* at 1138. Although the plaintiff was unlikely to return to the market while the barriers remained, given that he "would shop at the Paradise market if it were accessible," the threat of injury was sufficiently "imminent" to permit him to sue for injunctive relief. *Id.*

We reaffirmed the deterrent effect doctrine in *Doran*. In *Doran*, the plaintiff

> alleged that he had visited the 7-Eleven store on ten to twenty prior occasions, that he is currently deterred from visiting the store because of its accessibility barriers, that the store is conveniently located near his favorite fast food restaurant in Anaheim, and that he plan[ned] to visit Anaheim at least once a year on his annual trips to Disneyland.

*Doran*, 524 F.3d at 1040. Because the plaintiff was deterred from visiting the store, we concluded that there was "an actual or imminent threat that, during his planned future visits to Anaheim, [he] will suffer harm as a result of the alleged barriers," and we found standing to pursue injunctive relief. *Id.* at 1041.

**[5]** Thus, an ADA plaintiff can show a likelihood of future injury when he intends to return to a noncompliant accommodation and is therefore likely to reencounter a discriminatory architectural barrier. Alternatively, a plaintiff can demonstrate sufficient injury to pursue injunctive relief when discriminatory architectural barriers deter him from returning to a noncompliant accommodation. Just as a disabled individual who intends to return to a noncompliant facility suffers an imminent injury from the facility's "existing or imminently threatened non-compliance with the ADA," a plaintiff who is

deterred from patronizing a store suffers the ongoing "actual injury" of lack of access to the store. *Pickern*, 293 F.3d at 1138. That is, an ADA plaintiff suffers an injury-in-fact either because discriminatory architectural barriers deter him from returning to a facility or because they "otherwise interfere with his access to" the facility. *Doran*, 524 F.3d at 1042 n.5. Thus, we have Article III jurisdiction to entertain requests for injunctive relief both to halt the deterrent effect of a noncompliant accommodation and to prevent imminent "discrimination," as defined by the ADA, against a disabled individual who plans to visit a noncompliant accommodation in the future.

## III.

**[6]** Once a plaintiff establishes Article III standing, there remains the question of the scope of his standing. *See Doran*, 524 F.3d at 1042. As we have explained, "This question requires us to consider the precise nature and scope of the injury that [Chapman] and similarly situated plaintiffs have suffered when they encounter . . . architectural barriers violative of the ADA." *Id.* Because the parties dispute the legal rule governing this question, we address it here.

**[7]** We have held that "[a]n ADA plaintiff who has Article III standing as a result of at least one barrier at a place of public accommodation may, in one suit, permissibly challenge all barriers in that public accommodation that are related to his or her specific disability." *Id.* at 1047.[7] Under *Doran*, Chapman need not have personally encountered all the barriers that impede his access to the Store in order to seek an injunction

---

[7]Though *Doran* involved the deterrent effect doctrine, the *Doran* court did not limit the applicability of this rule to cases where standing is predicated upon deterrence as opposed to imminently threatened injury. *See Doran*, 524 F.3d at 1042 ("[I]t is not an essential prerequisite of an ADA plaintiff's standing that he prove that deterrence caused by previously encountered violations was the reason that a particular violation was not discovered and hence alleged in his complaint.").

to remove those barriers. *See Pickern*, 293 F.3d at 1138. If Chapman has standing to pursue injunctive relief as to some of the barriers that he actually encountered, then he has standing to seek an order requiring the removal of all barriers at the Store that are related to his disability and that he is likely to encounter on future visits. *Doran*, 524 F.3d at 1047.

**[8]** The rule in *Doran* is a direct application of the statute. The ADA's remedial scheme is not limited to orders for the removal of encountered barriers, but instead dictates that "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12188(a)(2); *see also Doran*, 524 F.3d at 1043. The ability to pursue this relief extends to "any person who is being subjected to discrimination on the basis of disability in violation of this subchapter or who has reasonable grounds for believing that such person is about to be subjected to discrimination." 42 U.S.C. § 12188(a)(1). The statute provides that "[n]othing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions." *Id.* Thus, the ADA specifically does not require that the disabled individual personally encounter each architectural barrier as a predicate to seeking its removal.

We explained in *Doran* that our holding was "fully consistent with the Supreme Court's Article III standing discourse." *Doran*, 524 F.3d at 1044. Indeed, our analysis simply applied the standing framework established in *Lujan*. In *Lujan*, there was no dispute that the plaintiffs had not suffered a past injury from the administrative rule they challenged. The Court concluded the plaintiffs lacked Article III standing only because the threat of future harm was too remote to constitute an imminent injury. *Lujan*, 504 U.S. at 564. Had the prospect of future injury been more concrete, the absence of a past injury resulting from the rule's application would not have precluded Article III standing. *Id.* at 564 n.2; *see also Pickern*, 293 F.3d

at 1138 ("[A] plaintiff who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers 'imminent injury.' ").

[9] An ADA challenge to unencountered barriers does not implicate the prohibition on generalized grievances, or violate prudential standing principles, by raising the rights of third parties rather than the rights of the individual plaintiff. We stated in *Doran* that "[e]ven if a disabled plaintiff did not know about certain barriers when the plaintiff first filed suit, that plaintiff will have a 'personal stake in the outcome of the controversy' so long as his or her suit is limited to barriers related to that person's particular disability." *Doran*, 524 F.3d at 1044. We recognized that "it is ultimately misleading to conceptualize each separate architectural barrier inhibiting a disabled person's access to a public accommodation as a separate injury that must satisfy the requirements of Article III." *Id.* at 1042. Rather, the injury suffered by disabled plaintiffs is the "discrimination" under the ADA that results from an accommodation's "failure to remove architectural barriers." *Id.* at 1043 (quoting 42 U.S.C. § 12182(b)(2)(A)(iv)). In *Doran*, this injury was suffered "the first time [the plaintiff] encountered architectural barriers," and it continued even after some of the barriers were corrected because "others remained in place that would have interfered with his access as a wheelchair user." *Id.* at 1042-43. We held that "a constricted reading of the ADA," such as requiring an encounter with each alleged barrier, "could render the benefits [the ADA] promises largely illusory." *Id.* at 1047.

Moreover, "a rule limiting a plaintiff to challenging the barriers he or she had encountered . . . would burden businesses and other places of public accommodation with more ADA litigation, encourage piecemeal compliance with the ADA, and ultimately thwart the ADA's remedial goals of eliminating widespread discrimination against the disabled and integrating the disabled into the mainstream of American life." *Id.* Noting the "broad view" of standing that applies in the con-

text of remedial civil rights legislation, as well as the scope of injunctive relief provided by the ADA, *id.* at 1043-44, we held that an ADA plaintiff who has standing to sue because he has been discriminated against in one aspect of a public accommodation may, in one lawsuit, obtain an injunction to prevent impending discrimination throughout the accommodation, *id.* at 1047.

**[10]** The Store asks us to overturn our precedent on this point, arguing that each architectural barrier in a public accommodation be treated as a separate injury in the standing inquiry. We decline to do so. The Store's conception of a cognizable "injury" under the ADA mistakes the statute's forest for its trees by focusing on individual barriers instead of access to places of public accommodation. An ADA plaintiff suffers a legally cognizable injury under the ADA if he is "discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, [or] facilities . . . of any place of public accommodation." 42 U.S.C. § 12182(a). This experience of discrimination confers standing to seek the remedy provided by the ADA — an injunction to correct the other, albeit unencountered, barriers that will subject a wheelchair-bound individual like Chapman to future discrimination, provided that the threat of such discrimination is real and immediate.

The only other circuit to have considered the question agrees with our conclusion that an ADA plaintiff may, in one lawsuit, pursue an injunction to remove all accessibility barriers related to his disability that he is likely to encounter at a place of public accommodation to which he intends to return. *See Steger*, 228 F.3d at 894. In *Steger*, a blind individual was unable to locate the men's restroom on the first floor of an office building because it lacked signage with raised lettering. *Id.* at 891-92. The plaintiff sought an injunction to address barriers related to his disability that existed throughout the building, including not only the inadequate signage for the men's restroom on the first floor, but also for unencountered

barriers, including an elevator that lacked audible signals and numerous other doors that lacked raised-letter signs. *Id.* at 893. The building's owner argued that the plaintiff's injury was limited to the first floor restroom and he lacked standing as to any other barriers. The Eighth Circuit rejected the defendant's narrow construction of the plaintiff's injury, concluding that the plaintiff "need not encounter all of these barriers to obtain effective relief." *Id.* at 894. Recognizing that, under the ADA, "injunctive relief is mandated to 'make such facilities readily accessible to and usable by individuals with disabilities,' " the Eighth Circuit concluded that Steger had standing to seek relief for any ADA violations in the building that affected his specific disability. *Id.* (quoting 42 U.S.C. § 12188(a)(2)). We share the Eighth Circuit's view that an ADA plaintiff who has been discriminated against in one aspect of a public accommodation may, in a single lawsuit, obtain an injunction to prevent impending discrimination on account of his specific disability throughout the accommodation.

**[11]** This conclusion does not transform the ADA into an open-ended private attorney general statute, because the scope of such an injunction is limited. First, our holding in no way relieves plaintiffs from the constitutionally imposed burden of demonstrating an injury-in-fact and a sufficient likelihood of repeated harm. An ADA plaintiff must show at each stage of the proceedings either that he is deterred from returning to the facility or that he intends to return to the facility and is therefore likely to suffer repeated injury. He lacks standing if he is indifferent to returning to the store or if his alleged intent to return is not genuine, or if the barriers he seeks to enjoin do not pose a real and immediate threat to him due to his particular disability. Injunctions do not extend to barriers not affecting persons with the plaintiff's particular disability, *see Steger*, 228 F.3d at 893-94; barriers that the plaintiff is not reasonably likely to encounter, such as those in areas off limits to customers, *see Long*, 267 F.3d at 924; or barriers in

areas he is unlikely to enter, such as ladies' restrooms or employee work areas.

Second, in declining to overturn *Doran*, we do not expand or otherwise modify Congress's considered choice as to the rights or remedies available to the disabled. As noted above, our precedent is anchored in Congress's decision to authorize courts to issue "order[s] to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12188(a)(2).

Finally, we are not persuaded by Pier One's warning that *Doran* opens the floodgates to "potentially vexatious lawsuits." Instead, our precedent facilitates ADA compliance by eliminating the piecemeal litigation that would result from the contrary rule Pier One urges. As we have previously observed, "It makes no sense to require a disabled plaintiff to challenge, in separate cases, multiple barriers in the same facility, controlled by the same entity, all related to the plaintiff's specific disability." *Doran*, 524 F.3d at 1047.

**[12]** Our reaffirmance of *Doran* is entirely consistent with our standing discourse. When a plaintiff "has encountered or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has . . . suffered an injury in fact." *Id.* at 1042 n.5. The threat of repeated injury in the future is "real and immediate" so long as the encountered barriers either deter him from returning or continue to exist at a place of public accommodation to which he intends to return. When discrimination under the ADA subjects the plaintiff to an injury-in-fact, injunctive relief addressing only the barriers that the plaintiff encountered, but ignoring other existing barriers that he is reasonably likely to encounter, fails to dissipate the real and immediate threat of future discrimination.

## IV.

**[13]** Throughout this litigation Chapman has failed to allege and prove the elements of standing in the ADA context

that we describe above. Chapman's complaint itself is jurisdictionally defective. Although Pier One failed to move to dismiss under Federal Rule of Civil Procedure 12(b)(1), "[f]ederal courts are required sua sponte to examine jurisdictional issues such as standing." *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002) (internal quotation marks omitted); *accord United States v. Hays*, 515 U.S. 737, 742 (1995). The existence of Article III standing is not subject to waiver. *Hays*, 515 U.S. at 742. It must be demonstrated "at the successive stages of the litigation," *Lujan*, 504 U.S. at 561, and "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action," Fed. R. Civ. P. 12(h)(3). "[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review.' " *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934)).

**[14]** While we are mindful of the generous pleading standards that apply to civil rights plaintiffs, "a liberal interpretation of a . . . civil rights complaint may not supply essential elements of the claim that were not initially pled." *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)). Chapman's complaint fails to sufficiently allege the essential elements of Article III standing. Although Chapman alleges that he is "physically disabled," and that he "visited the Store" and "encountered architectural barriers that denied him full and equal access," he never alleges what those barriers were and how his disability was affected by them so as to deny him the "full and equal" access that would satisfy the injury-in-fact requirement (*i.e.*, that he personally suffered discrimination under the ADA on account of his disability).

Instead, Chapman attached to his complaint an "Accessibility Survey," which listed barriers known to him that he claims "denied him access to the Store, *or* which he seeks to remove

on behalf of others under related state statutes." The Accessibility Survey simply identifies alleged ADA and CBC violations without connecting the alleged violations to Chapman's disability, or indicating whether or not he encountered any one of them in such a way as to impair his full and equal enjoyment of the Store.

The nature of the entries in the Accessibility Survey is illustrated by the entry for "Accessible Entrance Door Outside Signage." Below that heading is listed:

| CBC | ADAAG | |
|-----|-------|---|
| 1117B.5.8.1.2 | 4.30.7 | a.  Without ISA mounted on required right side of double |
| 1117B5.7 | 4.30.6 | leaf doors (on left side) (CBC more stringent) |
| 220-Shall | | |
| | | |
| 1117B.5.7 | 4.30.6 | b.  ISA symbol is not mounted at the required height of 60 |
| 220-Shall | | inches center from surface on right side of double leaf |
| | | door (44 inches on left side) |

This list of alleged CBC and ADAAG violations[8] cannot substitute for the factual allegations required in the complaint to satisfy Article III's requirement of an injury-in-fact. Chapman does not even attempt to relate the alleged violations to his disability.[9]

Unlike in other cases where we have found Article III standing, *see, e.g.*, *D'Lil*, 538 F.3d at 1037, Chapman leaves the federal court to guess which, if any, of the alleged viola-

---

[8]It bears noting that some of the listings in the Accessibility Survey, such as signage above the panic bar, do not even allege violations of the ADAAG; instead, they merely recite portions of the ADAAG's requirements. This is insufficient to allege discrimination under the ADA.

[9]The Supreme Court's recent decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), supports this conclusion. Chapman's allegation that the barriers at the Store "denied him full and equal enjoyment" is precisely the "formulaic recitation" of the elements of a claim that the Supreme Court has deemed insufficient under Rule 8. *Id.* at 1949. To sufficiently allege standing, Chapman must do more than offer "labels and conclusions" that parrot the language of the ADA. *Id.*

tions deprived him of the same full and equal access that a person who is not wheelchair bound would enjoy when shopping at Pier One. Nor does he identify how any of the alleged violations threatens to deprive him of full and equal access due to his disability if he were to return to the Store, or how any of them deter him from visiting the Store due to his disability. Although Chapman may establish standing as to unencountered barriers related to his disability, the list of barriers incorporated into his complaint does nothing more than "perform a wholesale audit of the defendant's premises." *Martinez v. Longs Drug Stores, Inc.*, No. CIV-S-03-1843 DFL CMK, 2005 U.S. Dist. LEXIS 23737, at *12 (E.D. Cal. Aug. 25, 2005).[10]

**[15]** Because Chapman lacked standing at the outset of this litigation to assert the ADA claims, the district court should have dismissed them. *See* Fed. R. Civ. P. 12(b)(1); *Hays*, 515 U.S. at 747 (ordering the district court to dismiss the complaint for lack of standing). We therefore vacate the district court's grant of summary judgment, and remand with instructions to dismiss Chapman's ADA claim for lack of jurisdiction and for further proceedings consistent with this opinion.[11]

### VACATED, DISMISSED and REMANDED.

---

[10]It is for the same reason that the Card Report does not supply the "injury-in-fact" element, even if it had been properly filed as part of an amended complaint. It, too, does nothing more than to list additional CBC and ADAAG provisions that the Store allegedly violated.

[11]Because we reverse the district court's Article III standing determination, we need not address the remaining issues on appeal.

N.R. SMITH, Circuit Judge, concurring in the judgment, joined by RAWLINSON, Circuit Judge:

I concur in the majority's conclusion that Chapman failed procedurally to demonstrate standing to maintain this action. However, I disagree with the majority's analysis in reaching its conclusion and believe it expands standing for ADA plaintiffs beyond the constitutional confines of Article III.

## I.  Standing under the Americans with Disabilities Act of 1990

The Supreme Court has not equivocated regarding the importance of standing within the federal courts. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 37 (1976). The Article III requirement of standing is "essential and unchanging." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). At an irreducible constitutional minimum, an Americans with Disabilities Act of 1990 ("ADA") plaintiff must establish standing by showing (1) he or she has suffered an "injury in fact;" (2) there is "a causal connection between the injury" and the defendant's complained-of conduct; and (3) it is likely "that the injury will be redressed by a favorable decision." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008) (citing *Lujan*, 504 U.S. at 560-61). Even if a claim satisfies the three elements of standing to sue for past illegal conduct, to sustain standing for injunctive relief, a claimant must also establish a " 'real and immediate threat of repeated injury.' " *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).

### A.  Encountered Barriers

In the ADA, Congress created a cause of action for disabled persons who experience discrimination through archi-

tectural barriers. 42 U.S.C. § 12101(a)(5). "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *Linda R. S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973). This principle reflects Congress's ability to elevate "*de facto* injuries," otherwise not actionable at common law, into "legally cognizable injuries." *Lujan*, 504 U.S. at 578. For example, the Civil Rights Act of 1968 elevated an individual's "personal interest in living in a racially integrated community" to a cognizable legal injury if a private party denied that interest. *Id.* (citing *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 208-12 (1972)). However, "broadening of the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury." *Id.* (quoting *Sierra Club v. Morton*, 405 U.S. 727, 738 (1972)) (quotation marks and alteration omitted).

Under the above articulated requirements for standing, I agree fully with the majority's ultimate holding that:

> Chapman leaves the federal court to guess which, if any, of the alleged violations deprived him of the same full and equal access that a person who is not wheelchair bound would enjoy when shopping at Pier One. Nor does he identify how any of the alleged violations threatens to deprive him of full and equal access due to his disability if he were to return to the Store, or how any of them deter him from visiting the Store due to his disability.

Maj. Op. at 463-64. Requiring that an ADA plaintiff plead and prove that a barrier affects him by making access or enjoyment of a facility more difficult for him than for a non-disabled person satisfies Article III's requirement that an injury affect a "plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. However, I must disagree with the majority's statement that "[w]here the [ADAAG defined] bar-

rier is related to the particular plaintiff's disability, . . . an encounter with the barrier necessarily injures the plaintiff by depriving him of full and equal enjoyment of the facility." Maj. Op. at 450-51 n.4. In this statement, the majority confuses a cognizable interest with an actual injury to that interest.

To demonstrate that he has suffered an "injury in fact," a plaintiff must establish an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Doran*, 524 F.3d at 1039 (quoting *Lujan*, 504 U.S. at 560). Thus, a plaintiff must allege more than encountering an ADAAG defined barrier in order to establish standing. *See Lujan*, 504 U.S. at 563 ("[T]he injury in fact test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." (internal quotation marks and citation omitted)); *id*. at 560 n.1 ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way.")*; see also Warth v. Seldin*, 422 U.S. 490, 501 (1975) (Although Congress may grant a right to bring an action otherwise barred, "the plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants.").

To the extent the majority's analysis would have allowed Chapman to simply allege a specific encounter with an ADAAG barrier related to his disability to satisfy the injury in fact requirement for standing, it fails to meet the requirement that the encounter "affect[s] the plaintiff in a personal and individual way," *Lujan*, 504 U.S. at 560 n.1, and is no different than allowing standing for barriers not related to the plaintiff's disability. An encounter with an ADAAG defined barrier that a disabled person does not notice (or that does not affect the individual) is not a "distinct and palpable" injury. *See Warth*, 422 U.S. at 501.

The majority correctly points out that a barrier need not "completely preclude the plaintiff from entering or from any

use of the facility" to give standing to the plaintiff. Maj. Op. at 450, *See Fortyune*, 364 F.3d 1081-82. However, it is important that the encounter with the barrier adversely affect the plaintiff in some way to satisfy the particularized injury requirement for injury in fact. *Lujan*, 504 U.S. at 578; *Doran*, 524 F.3d at 1042 n.5 ("Once a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of *or otherwise interfere with his access to* a place of public accommodation, he has already suffered an injury in fact. . . ." (emphasis added)).

An abstract injury (as suggested by the majority) is not enough. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). "[C]laims of injury that are purely abstract, even if they might be understood to lead to 'the psychological consequence presumably produced by observation of conduct with which one disagrees,' do not provide the kind of particular, direct, and concrete injury that is necessary to confer standing. . . ." *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 616 (1989) (internal citation omitted).

Rather than merely pointing to a violation of the ADAAG, a plaintiff must also point to some type of personalized injury, whether the injury is objective (physical or economic)[1] or subjective (emotional or aesthetic). This requirement is consistent with precedent. For example, in *Fortyune*, the plaintiff who planned to return to the movie theater nevertheless was adversely affected, because he worried about his ability to sit with his wife, as was his right. *See* 364 F.3d at 1081. Given the language in *Fortyune*, a barrier's adverse effect on a plaintiff may encompass frustration, embarrassment, or physical difficulty with a barrier in addition to actually being deterred from entering a facility. Another example of a subjective adverse affect is the aesthetic injury relied upon by environ-

---

[1]Physical or economic injuries, of course, have long been recognized as generally sufficient to maintain injury in fact. *See Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U. S. 150 (1970).

mental plaintiffs to maintain standing. *See Sierra Club*, 405 U.S. at 734-35.

The majority misconstrues personalized injury as a solely subjective one that could give rise to "vexatious litigation."[2] Majority Opinion at 451 n.5. The majority ignores, however, that in addition to a personalized injury a plaintiff must also plead and prove the other two elements of standing in order to meet the standing requirements. An ADA plaintiff must show his injury is caused by a violation of the objective ADAAG standards and may be redressed by a favorable order from a court. *See Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1137 (9th Cir. 2002) ("[Defendant's] noncompliance with [the ADA] has caused [plaintiff's] injury, and an injunction requiring [defendant] to comply with the ADA would redress it."). Thus, rather than leading to vexatious litigation, this is a higher standard from that announced by the majority.[3]

---

[2]In addition, the majority attempts to fault the concurrence for articulating a different standard than that recognized by the three-judge panel, on which he sat. Confined by the holding of another three-judge panel in *Doran*, the original panel also held that it was "clear" Chapman had standing to challenge the ADA barriers that he "claimed to have encountered" without analyzing whether he claimed that he was harmed by the barriers. *See Chapman v. Pier 1 Imports, Inc.*, 571 F.3d 853, 857 (9th Cir. 2009). While the original panel was confined by *Doran*, an *en banc* panel need not be constrained by such precedent. *See Upton v. C.I.R.*, 283 F.2d 716, 723 (9th Cir. 1960). Regardless of whether Chapman encountered barriers, the court should be required to analyze whether Chapman has alleged or shown that the barriers actually adversely affected him.

[3]It is true that the vast majority of plaintiffs will believe that they have been adversely affected by a barrier that is noncompliant with the ADA. When a plaintiff, however, encounters a barrier, yet believes it has no actual effect on his ability to participate in or benefit from a place of accommodation, then the plaintiff is, in reality, suing on behalf of others and does not have standing. *See Valley Forge Christian College v. Am. United for Separation of Church and State, Inc.*, 454 U.S. 464, 473 (1982) ("The federal courts have abjured appeals to their authority which would convert the judicial process into no more than a vehicle for the vindication of the value interests of concerned bystanders." (internal quotations and citation omitted)).

In fact, the majority's statement that a simple encounter with a barrier is sufficient to confer standing collapses the injury in fact element of standing with the causation element. If the injury in fact element is an encounter with an ADA non-compliant barrier and the causation element is "noncompliance with [the ADA]," then, in reality, these two elements are now one and the majority has expanded standing under the ADA to render the three part test illusory.

Lastly, to satisfy the requirement for a "real and immediate" threat of repeated injury required by Article III for injunctive relief, a plaintiff must also show an "actual or imminent" injury. *Pickern*, 293 F.3d at 1138. An actual or imminent injury occurs when a plaintiff has a concrete intent to return to a facility with a barrier which will continue to adversely affect his ability to benefit from or participate in the facility. *Id.*; *see also Fortyune*, 364 F.3d at 1081-82. As an alternative basis for an actual injury, this circuit has held that a plaintiff, who does not intend to return to a non-ADA compliant store because he is deterred by a barrier at the store, suffers an ongoing injury, redressable by injunctive relief. *Pickern*, 293 F.3d at 1138; *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1036-37 (9th Cir. 2008). In *Pickern* and *D'Lil*, plaintiffs' refusal to return to facilities where barriers existed was the injury that satisfied *Lujan*'s requirement that the plaintiff be affected in a "personal and individual way." In *Fortyune*, the personalized, ongoing adverse effect was the inability to sit next to a companion (i.e., enjoy full benefit of the facility). In either case, an injury *in addition to* the encounter with the barrier itself satisfied the "actual or imminent" injury requirement for injunctive relief.

Under the above reasoning, the majority's holding that Chapman failed to identify how any of the alleged violations "deprived him of the same full and equal access that a person who is not wheelchair bound would enjoy" adequately reflects the requirements that an ADA plaintiff must plead and prove to show injury in fact sufficient to maintain standing. To be

consistent with the Constitution, injury in fact for standing for injunctive relief under the ADA requires a plaintiff to (1) encounter or have knowledge of a barrier; (2) sufficiently allege that he or she was, at a minimum, adversely affected by the barrier; and (3) sufficiently allege either a concrete plan to return to the facility or that the adverse effect of the barrier deters the plaintiff from returning to the facility. To the extent that the majority would allow a simple encounter with an ADAAG barrier that does not "deprive" a plaintiff "of the same full and equal access" that a non-disabled person would enjoy at a facility to confer standing, it exceeds the confines of Article III and impermissibly allows plaintiffs to sue on behalf of others, rather then themselves.

### B.   Unencountered Barriers

Once standing based on encountering one barrier is established, "[t]here remains a question . . . about the scope of barriers that [a plaintiff] may challenge." *Doran*, 524 F.3d at 1042. Expanding on the "deterrent effect" doctrine, *Doran* held that, once a plaintiff establishes that he encountered a barrier which deterred him from use and enjoyment of the facility, that plaintiff could then send an expert into the store to discover other ADA violations. 524 F.3d at 1043-44. The plaintiff was then deemed to have standing to challenge all discovered violations affecting his or her disability. *Id. Doran* reasoned:

> Given that an ADA plaintiff has standing because of deterrence from returning in the face of uncertainty, it is prudent to eliminate that uncertainty through the judicial device of discovery, thus allowing the plaintiff to obtain by formal means the information about the scope of the defendant's violations that he may have been unable to safely ascertain himself because of those same violations.

*Id.* at 1043. *Doran* justified the constitutionality of this rule by stating "we have been instructed to take a broad view of

Article III standing in civil rights cases where private rights of action are the primary means of enforcing the statute." *Id. Doran* concluded that the "list of barriers would then in total constitute the factual underpinnings of a single legal injury . . . [that] actually harmed the disabled person by deterring that disabled person from visiting a facility . . . ." *Id.* at 1044. In other words, when a plaintiff is deterred from entering a facility because of non-ADA compliant barriers, all the barriers existing at the facility (known and unknown) can be construed as one injury of deterrence. Our holding in *Doran* reflects the necessity of deterrence:

> An ADA plaintiff who has encountered or has personal knowledge of at least one barrier related to his or her disability when he or she files a complaint, *and who has been deterred from attempting to gain access to the public accommodation because of that barrier*, has suffered an injury in fact for the purpose of Article III. An ADA plaintiff who has Article III standing as a result of at least one barrier at a place of public accommodation may, in one suit, permissibly challenge all barriers in that public accommodation that are related to his or her specific disability.

524 F.3d at 1047 (internal citation omitted, emphasis added). When a plaintiff is not deterred from returning to a facility, there is not a unification of barriers into one injury in fact constituting deterrence. Thus, there can be no standing to challenge unencountered barriers.

*Doran*'s reasoning did not require "completely preclud[-ing]" a plaintiff from entering a facility in order to satisfy the "imminent" injury necessary for injunctive relief. Instead, the deterrence necessary for standing to challenge unencountered barriers in the context of *Doran* means, at a minimum, "uncertainty about . . . other, potentially dangerous obstacles . . . to be encountered when the disabled persons return to the site after the 'successful' conclusion of their suit. Such uncer-

tainty is itself an actual, concrete and particularized injury." 524 F.3d at 1043. This uncertainty ensures that the plaintiff is not asking for an injunction based solely on past injuries, but is continuing to suffer the ongoing injury of deterrence.

By not requiring deterrence before a plaintiff can conduct discovery to find barriers, the majority seeks to allow an ADA plaintiff to represent similarly situated plaintiffs, *regardless* of whether he would be injured (adversely affected) by the challenged barrier. Because Chapman repeatedly disavowed any deterrence resulted from the barriers he encountered, he experienced no unified injury and had no basis to challenge all unencountered barriers at Pier 1.

Not only does such an expansion of standing violate the constitutional aspects of standing, as discussed above, but it also violates the prudential aspects of standing. In *Doran*, we recognized the "question regarding the breadth of [an ADA plaintiff's] right to sue also implicates the prudential aspects of the standing doctrine." 524 F.3d at 1044 (citing *Bennett v. Spear*, 520 U.S. 154, 164 (1997)). Prudential standing limits federal jurisdiction, including "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Allowing a plaintiff to challenge barriers which never affected him in the past, which he had never considered at the time of filing the complaint, and of which he could easily learn by returning to a store (that he is not deterred from frequenting), runs afoul of the prudential principles against generalized grievances.

As our sister circuit has explained, "[t]he ADA does not permit private plaintiffs to bring claims as private attorneys general to vindicate other people's injuries." *McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 69 (1st Cir. 2003); *see also*

*Raines v. Byrd*, 521 U.S. 811, 820 (1997) ("[W]e must put aside the natural urge to proceed directly to the merits of this important dispute and to 'settle' it for the sake of convenience and efficiency. Instead, we must carefully inquire as to whether appellees have met their burden of establishing that their claimed injury is personal, particularized, concrete, and otherwise judicially cognizable.").

Therefore, as the prior panel outlined, Chapman did not have standing as to unencountered barriers, because he was not deterred from returning to Pier 1. The lack of deterrence defeats *Doran*'s justification for allowing unencountered barriers to be considered as one injury and allows Chapman to bring what amounts to generalized grievances against Pier 1.