**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

BRENDA PICKERN,
              *Plaintiff-Appellant,*

v.

PIER 1 IMPORTS (U.S.), INC.;
SIEGMUND WEINSTOCK FAMILY
TRUST,
              *Defendants-Appellees.*

No. 04-17118

D.C. No.
CV-03-00121-
FCD/JFM

ORDER AND
OPINION

Appeal from the United States District Court
for the Eastern District of California
Frank C. Damrell, District Judge, Presiding

Argued and Submitted
February 13, 2006—San Francisco, California

Filed July 26, 2006

Before: Procter Hug, Jr., Arthur L. Alarcón, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Hug

8403

## COUNSEL

Scottlynn J. Hubbard, IV, Law Offices of Lynn Hubbard, Chico, California, for the appellant.

Richard Cortez, Jr. and Laura M. Franze, Akin Gump Strauss Hauer & Feld LLP, Dallas Texas, for the appellees.

## ORDER

The mandate issued on May 8, 2006 is hereby recalled. The request to publish the unpublished Memorandum disposition is granted. The Memorandum disposition filed April 14, 2006, is withdrawn and replaced with an opinion authored by Judge Hug.

## OPINION

HUG, Circuit Judge:

Brenda Pickern appeals the district court's grant of summary judgment to defendants/appellees Pier 1 Imports (U.S.), Inc. and Siegmund Weinstock Family Trust (collectively "the Appellees"). In granting summary judgment, the district court held that the Appellees had no obligation under Title III of the Americans with Disabilities Act ("ADA") to build an access ramp to the Pier 1 Imports store ("the Store") over land owned and operated by the City of Chico. The district court also decided that it need not address allegations of additional ADA violations because Pickern's pleadings did not provide sufficient notice of those allegations and because Pickern submitted the expert report supporting those allegations after the deadline contained in the court's scheduling order. We affirm.

### I.    Factual and Procedural Background

Pickern is a visually-impaired and mobility-impaired woman who depends on an electric wheelchair for transportation. Pier 1 Imports (U.S.), Inc. operates the Store and the Siegmund Weinstock Family Trust is Pier 1's landlord. The Store is located at 1931 East 20th Street in Chico, California and is separated from 20th Street by a long strip of land that contains a public sidewalk and a ten-foot wide grassy berm; the grassy strip lies between the sidewalk and the Store prop-

erty. No access ramp connects the sidewalk to the Store's parking lot. The sidewalk is not within the boundary of the property owned by the Siegmund Weinstock Family Trust. The City of Chico owns both the grassy strip and the sidewalk. The Appellees do not own or lease the strip of land, and do not mow, maintain, or manage it. It is undisputed that the City had exclusive control over the design and construction of the sidewalk.

Pickern cannot traverse the grassy strip in her wheelchair. Instead, she can access the Store by proceeding down the sidewalk along 20th Street to one of two main Mall entrances or to one of the several access ramps connecting the sidewalk to the Mall parking lot. On or about December 2002, Pickern's attorney requested that the Appellees construct an access ramp from the public sidewalk across the grass to connect the sidewalk to the Store parking lot. The Appellees responded that they were not obligated to build such a ramp because they did not own the property.

On January 23, 2003, Pickern filed a complaint alleging claims for violation of the ADA. In the complaint, Pickern alleged that the Appellees violated Title III of the ADA by failing to remove architectural barriers. Although Pickern included long lists of possible architectural barriers such as the failure to widen doors, remove obstructing furniture, and provide Brailled, raised, and accessible signage, she did not actually allege that any of these specific barriers existed. Instead, she alleged that the Appellees' failure to remove architectural barriers "may include, but is not limited to" these specific barriers.

The district court entered a Scheduling Order on May 12, 2003, setting January 20, 2004 as the deadline for parties to designate experts and submit written expert reports. The Scheduling Order stated:

> All counsel are to designate in writing, file with the court, and serve upon all other parties the name,

address, and area of expertise of each expert that they propose to tender at trial not later than **January 20, 2004**. The designation shall be accompanied by a written report prepared and signed by the witness. The report shall comply with Fed. R. Civ. P. 26(a)(2)(B).

The Scheduling Order also stated: "Failure of a party to comply with the disclosure schedule as set forth above in all likelihood will preclude that party from calling the expert witness at the time of trial." The Scheduling Order set a deadline of March 22, 2004 for the completion of all discovery.

On February 19, 2004, the Appellees filed a motion for summary judgment. On April 30, 2004, Pickern filed a motion for summary adjudication regarding the Appellees' liability for not constructing the access ramp.

On April 16, 2004, after the close of discovery and in response to the Appellees' motion for summary judgment, Pickern raised allegations of accessibility violations unrelated to the ramp across the grassy strip of land. On that date, Pickern filed an expert's declaration from Joe Card with a report identifying alleged accessibility violations related to the slope of ramps, cross-slope of sidewalks, emergency fire exits, and emergency landings.

The district court granted the Appellees' motion for summary judgment and denied Pickern's motion for summary adjudication, holding that the Appellees had no obligation to build an access ramp over the grassy strip of land that belonged to the City of Chico. As part of its decision, the district court disallowed Pickern's new assertions of alleged accessibility violations that she raised before the court for the first time following the Appellees' motion for summary judgment. The court reasoned that those allegations were not contained in the complaint and Pickern had not amended or sought to amend the complaint to include those allegations.

The court also reasoned that Pickern offered no competent evidence to support the new claims because the only evidence submitted was the untimely expert report; the court refused to consider that report because Pickern had failed to comply with the Scheduling Order.

## II. Discussion

### A. The Access Ramp

We review *de novo* a district court's order granting summary judgment. *Navellier v. Sletten*, 262 F.3d 923, 938 (9th Cir. 2001). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the law. *Id.*

[1] For at least two reasons, Title III of the ADA requires that the Appellees in this case control the grassy strip of land in order to be subject to liability for failing to build a ramp over that land. First, the operative rule in Title III provides: "No individual shall be *discriminated* against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or *operates* a place of public accommodation." 42 U.S.C. § 12182(a) (emphasis added).

It is undisputed that the Appellees do not own or lease the grassy area at issue here. The City of Chico owns that land. Since the Appellees do not own or lease the strip of grass, they must "operate" the strip of grass in order to be liable under Title III. In this context, "operate" means "to put or keep in operation," "to control or direct the functioning of," or "to conduct the affairs of; manage." *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 849 (9th Cir. 2004) (internal quotations omitted).

**[2]** Second, "discrimination" includes "failure to remove architectural barriers . . . in existing *facilities* . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv) (emphasis added). According to the Department of Justice's ("DOJ") regulations implementing the ADA, "[t]he definition of 'facility' only includes the site over which the private entity may exercise *control* or on which a place of public accommodation[1] or a commercial facility is located." Department of Justice Preamble to Regulation on Nondiscrimination of the Basis of Disability by Public Accommodations and in Commercial Facilities, 28 C.F.R. pt. 36, App. B at 681 (2005) (emphasis added).

**[3]** The Appellees do not manage the strip of grass, mow it, or maintain it in any manner. There is no evidence at all that the Appellees engage in any conduct that would demonstrate that they control or otherwise operate the grassy strip.[2] In fact, although Pickern originally argued that the Appellees control the grassy strip of land, in her reply brief, she conceded that the Appellees do not control or manage the grassy strip.

---

[1]The issue of who operates the grassy strip is related to the issue of whether the disputed property even qualifies as a place of public accommodation. The DOJ has stated that

> *[f]acilities operated by government agencies or other public entities as defined in this section do not qualify as places of public accommodation.* The actions of public entities are governed by title II of the ADA and will be subject to regulations issued by the Department of Justice under that title.

28 C.F.R. pt. 36, App. B at 681 (emphasis added). All of the evidence in the instant case supports the conclusion that the City of Chico, a public entity, operates the strip of land at issue.

[2]Relying on a tortured interpretation of guidelines that were never adopted by the DOJ, Pickern argues for the first time on appeal that the grassy strip is part of the "site" because it is a park and the definition of site includes a park sandwiched in between a private property owner's property line and a public road or sidewalk. This argument is not only illogical and incorrect, but irrelevant. Regardless of the definition of "site," to be liable, the Appellees must control the grassy strip.

Pickern now claims that it is sufficient if the appellees *could* control or manage the grassy strip and she advances multiple arguments designed to prove that the Appellees could obtain control over the grassy strip. We need not determine whether the Appellees could obtain such control. Section 12182(a) prohibits discrimination only by people who own, lease, or operate a place of public accommodation. The statute says nothing about liability by persons who could operate a place of public accommodation.

Pickern's insistence that the ADA requires the Appellees to seek permission from the City of Chico to build an accessible route over the City's land finds no support in the law. In fact, the DOJ has made it clear that private entities are not required to seek such permission. *See* 28 C.F.R. pt. 36, App. B at 715 ("[T]here is no obligation for a private entity subject to title III of the ADA to seek or ensure compliance by a public entity with title II . . . . and any involvement by a private entity in seeking cooperation from a public entity is purely voluntary in this context.").

Given that the Appellees do not control or otherwise operate the grassy strip, Pickern's other arguments are irrelevant. Pickern attempts to rely on *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861 (9th Cir. 2004) and *Independent Living Res. v. Oregon Arena Corp.*, 1 F. Supp. 2d 1124 (D. Or. 1998) to support her claim that the Appellees can be held liable under the ADA even though the strip of land is owned by the City of Chico. These cases clearly are inapposite. Both cases simply stand for the proposition that private entities who enter into contractual agreements with public entities to lease or to manage, maintain, or otherwise control property owned by a public entity may be subject to Title III liability under certain conditions. *See Disabled Rights*, 375 F.3d at 872-76 (holding that private entity that operated a public accommodation on public property pursuant to a contract with a public entity could be liable under Title III of the ADA); *Independent Living*, 1 F. Supp. 2d at 1148

(holding that the private entity that had, pursuant to a contract with the city, designed and built walks that failed to comply with ADA design standards, could be held liable under the ADA even though a small part of these walks was outside the boundary of the private entity's site).[3]

[4] There is nothing in these cases to support the proposition that a private entity may be held liable under the ADA for discrimination that takes place on property it has not owned, leased, or controlled.[4] These cases simply do not apply to the instant case because there is no evidence that the Appellees own, lease, or control the grassy strip of land. Unlike the defendants in these cases, the Appellees in the instant case have not entered into contractual agreements with the City that would have provided them with control over the grassy strip.

[5] We therefore hold that the district court properly ruled that the Appellees were not required to build an access ramp across the grassy strip.

---

[3]The issue in the instant case is who, if anyone, is responsible under the ADA for designing and installing a route where one does not already exist. The issue in *Independent Living* was quite different. There, the court was determining whether a private entity that had constructed and designed a route could be held liable for improper design standards. *See Independent Living*, 1 F. Supp. 2d at 1148. The court held that the private entity was liable for its faulty design of the walks. *Id.* The court did not provide any citations to law in reaching these conclusions, but the liability was based on the fact that the private entity was the designer of the walks. *See id.* Therefore, the legal principles applicable there would not be applicable in the instant case.

[4]In fact, in *Independent Living*, the court did *not* impose liability on the private entity for the inadequate design of routes on public property where the private entity had not controlled the design and construction of those routes. *Independent Living*, 1 F. Supp. 2d at 1148.

## B.   The New ADA Allegations

We review *de novo* a district court's determination of whether a plaintiff's complaint complied with the notice pleading requirements of Fed. R. Civ. P. 8. *In re Dominguez*, 51 F.3d 1502, 1508 n.5 (9th Cir. 1995). We review a discovery sanction, including the exclusion of an expert's testimony for failure to comply with a scheduling order, for abuse of discretion. *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005).

**[6]** In response to the motion for summary judgment, Pickern raised issues of ADA violations that went beyond a failure to provide a ramp. Pickern attempts to justify these new factual allegations as falling within the original complaint under Rule 8's liberal notice pleading standard. The district court did not err by holding that Pickern failed to provide the Appellees with adequate notice of these new allegations. Federal Rule of Civil Procedure 8(a)(2) requires that the allegations in the complaint "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quotation omitted). In her complaint, Pickern made it clear what her claim was when she alleged that the Store "contains architectural barriers that make it inaccessible." She did not, however, provide any notice concerning the grounds upon which she based this claim. Pickern's complaint included lists of barriers that she now characterizes as illustrative of the kinds of barriers a disabled person may confront. She alleged that the Appellees' failure to remove architectural barriers "may include, but is not limited to" these specific barriers. However, she did not allege that any of these barriers actually existed at the Store. Providing a list of hypothetical possible barriers is not a substitute for investigating and alleging the grounds for a claim. Thus, the complaint gave the Appellees no notice of the specific factual allegations presented for the first time in Pickern's opposition to summary judgment.

**[7]** Although the new allegations were not part of the original complaint, Pickern might have proceeded by filing a timely motion to amend the complaint. However, Pickern did not amend the complaint to include more specific allegations. She also did not incorporate the "preliminary site report" into her complaint. Instead, it appears that, many months after filing the complaint, she merely provided a "preliminary site report" to the Appellees as part of settlement negotiations. This did not make the preliminary site report part of the record and it did not give the Appellees notice of what allegations Pickern was including in the suit. In addition, because the expert's report was not filed and served until after the discovery deadline, that report cannot be construed as notice that would prompt the Appellees to seek discovery regarding the new allegations.[5] Thus, the district court did not err in finding that Pickern failed to provide adequate notice of the new allegations.

Accordingly, the judgment of the district court is **AFFIRMED.**

---

[5]The district court did not abuse its discretion by deciding not to allow the testimony of Pickern's expert, Joe Card. It is not an abuse of discretion to exclude a party's expert testimony when that party failed to disclose the expert report by the scheduling deadline and that party reasonably could have anticipated the necessity of the witness at the time of the deadline. *Wong,* 410 F.3d at 1060. Pickern failed to file and serve the expert report by the deadline set forth in the scheduling order even though she clearly anticipated the need for that report.