Scott JOHNSON, Plaintiff,

v.

WAYSIDE PROPERTY, INC., a California Corporation, and J & C M Holding, Inc., a California Corporation, Defendants.

Civ. No. 2:13–1610 WBS AC.

United States District Court, E.D. California.

Signed Aug. 29, 2014.

Christopher Arnold Seabock, Phyl Grace, Raymond Ballister, Jr., Potter Handy LLP, Russell Handy, Mark D. Potter, San Diego, CA, for Plaintiff.

Michael David Welch, Michael Welch Associates, Sacramento, CA, for Defendants.

## MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT

WILLIAM B. SHUBB, District Judge.

Plaintiff Scott Johnson, who is wheelchair-bound, brought this action against defendants Wayside Property, Inc., and JC & M holding, Inc., the owners of Wayside Lumber. Plaintiff alleges that he encountered several barriers to access when he attempted to purchase wood at Wayside Lumber and asserts that these barriers to access violate the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") and California law. Plaintiff now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.

### I. *Factual & Procedural History*

Plaintiff is disabled and requires a wheelchair for mobility. (Johnson Decl. ¶ 2 (Docket No. 11–4).) In June 2013, plaintiff visited Wayside Lumber, a store operated by defendants, on two occasions to purchase items for a project. (*Id.* ¶ 5.) When plaintiff arrived at Wayside Lumber, he found that the only handicapped parking space was located on the far side of the lot, had faded signage, and did not have sufficient clearance for his wheelchair lift. (*Id.* ¶ 6–7.) The entrance to Wayside Lumber was equipped with a panel-style door handle, which plaintiff found difficult to use. (*Id.* ¶ 8.) And when plaintiff went inside the store to make purchases, the transaction counter was too high for him to reach comfortably. (*Id.* ¶ 9.)

On July 23, 2013, Noah Leiter, an investigator with the Center for Disability Access, visited Wayside Lumber to conduct a site inspection.[1] (Leiter Decl. ¶ 3 (Docket No. 11–5).) Leiter indicates that the only handicapped parking space was not marked as van-accessible, did not have a

---

1. Defendants object to Leiter's declaration on the basis that he was not disclosed as an expert witness. (*See* Defs.' Opp'n at 1 (Docket No. 14–1).) However, Leiter does not offer expert testimony; rather, his testimony is premised on his personal knowledge and observation of Wayside Lumber during two site inspections. *See* Fed.R.Evid. 701. And Leiter's declaration, in which he simply states what he observed on those two visits, is plainly not hearsay. *See* Fed.R.Evid. 801(c)(1). The court overrules these objections.

Defendants also object to a Certified Access Specialist ("CASp") report offered by plaintiff on the basis that it is hearsay and inadmissible expert testimony. (Defs.' Opp'n at 2.) The court does not rely on the CASp report and therefore overrules these objections as moot. Defendants rely on *Colo. Cross Disability Coal. v. Hermanson Family Ltd. P'ship I*, 264 F.3d 999, 1005 (10th Cir.2001), in support of the proposition that a plaintiff must submit expert testimony to prevail on an ADA claim. But that holding does not reflect the law of the Ninth Circuit, which has explicitly held that a plaintiff may prevail on an ADA claim using only evidence based on personal knowledge and observation. *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1046 (9th Cir.2013).

designated access aisle, had faded paint, had no blue border or wheelchair logo, and was located across a vehicular drive path from the building. (*Id.* ¶¶ 4–6.) He found that the door had a panel-style handle. (*Id.* ¶ 6.) And when he measured the transaction counter, he found that the counter was between 42 and 45 inches in height across its entire length. (*Id.* ¶ 8.)

Plaintiff filed this action on August 5, 2013, and asserted four claims for: (1) violations of the ADA, 42 U.S.C. § 12101 *et seq.;* (2) violations of the Unruh Civil Rights Act, Cal. Civ.Code §§ 51 *et seq.;* (3) violations of the California Disabled Persons Act, Cal. Civ.Code § 54; and (4) common-law negligence. Six days after they received the Complaint, defendants retained a Certified Access Specialist and scheduled a site inspection. (McVey Decl. ¶ 3 (Docket No. 14–2).) Less than a month later, defendants took several steps to remedy the alleged violations: they relocated and repainted the handicapped parking spaces, installed new door handles, and set up an area of the transaction counter with distinctive signage and a clipboard for disabled patrons. (*Id.* ¶¶ 4–6.) On May 29, 2014, Leiter returned to Wayside Lumber and confirmed that defendants had modified their handicapped parking area and door handle. (Leiter Decl. ¶¶ 10–11.) Plaintiff now moves for summary judgment on his ADA and UCRA claims pursuant to Rule 56.[2] (Docket No. 11.)

## II. *Discussion*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial. *Id.*

Once the moving party meets its initial burden, the burden shifts to the non-moving party to "designate 'specific facts

---

**2.** In his motion for summary judgment, plaintiff indicates that he will stipulate to the dismissal of his California Disabled Persons Act and common-law negligence claims "to ensure that this motion disposes of the entire case." (Pl.'s Mem. at 7 (Docket No. 11–1).) As a preliminary matter, the "stipulation" was not signed by both parties. It is therefore effective only to the extent that the Federal Rules of Civil Procedure permit plaintiff to unilaterally dismiss those claims.

As the Ninth Circuit has made clear, Federal Rule of Civil Procedure 41(a)(1) "does not allow for piecemeal dismissals. Instead, withdrawals of individual claims against a given defendant are governed by Fed.R.Civ.P. 15, which addresses amendments to pleadings." *Hells Canyon Preservation Council v. U.S. Forest Serv.*, 403 F.3d 683, 687 (9th Cir. 2005); *see generally* 8 *Moore's Federal Practice*, § 41.21[2] (Matthew Bender 3d ed.). Plaintiff has not explained why dismissal of his California Disabled Persons Act and negligence claims satisfies the standards set forth by Rule 15; accordingly, the court will not dismiss those claims at this juncture. Of course, the parties are free to discuss this issue further and to stipulate jointly to the dismissal of these claims.

**976**

showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting then-Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255, 106 S.Ct. 2505. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ... ruling on a motion for summary judgment...." *Id.*

### A. *Americans with Disabilities Act*

██ The ADA was enacted in 1990 to "remedy widespread discrimination against disabled individuals," *PGA Tour, Inc. v. Martin,* 532 U.S. 661, 674, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001), and permits private lawsuits against businesses that fail to accommodate individuals with disabilities,

42 U.S.C. § 12188(a). In order to prevail on an ADA claim, a "plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 730 (9th Cir.2007). Defendants do not dispute that plaintiff satisfies the first two elements.

██ "The third element—whether [a plaintiff is] denied public accommodations on the basis of disability—is met if there was a violation of applicable accessibility standards." *Moeller v. Taco Bell Corp.,* 816 F.Supp.2d 831, 847 (N.D.Cal.2011); *see Chapman v. Pier 1 Imps. (U.S.), Inc.,* 631 F.3d 939, 945 (9th Cir.2011) (en banc). Those standards are set forth by the ADA Accessibility Guidelines ("ADAAG"),[3] which "provide[ ] the objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations." *Chapman,* 631 F.3d at 945; *see* 28 C.F.R. pt. 1191 (2010 Standards); 28 C.F.R. pt. 36, App. D (1991 Standards).

Although the ADA does not mandate removal of structural barriers in existing facilities where removal is not "readily achievable," 42 U.S.C. § 12182(b)(2)(A)(iv),

---

**3.** The Department of Justice ("DOJ") promulgated the ADAAG in 1991 and revised it in 2010. *See Kohler v. Flava Enters., Inc.,* 826 F.Supp.2d 1221, 1229 (S.D.Cal.2011). All architectural and structural elements in a facility are required to comply with the 1991 Standards to the extent that compliance is readily achievable; by contrast, the 2010 standards apply only to elements that have been altered in existing facilities, or that fail to comply with the 1991 Standards, on or after March 15, 2012. 28 C.F.R. § 36.304(d)(1)-(2).

There is no evidence that defendants constructed or made any structural alterations to

Wayside Lumber between March 15, 2012 and June 4, 2013, the first date on which plaintiff visited the store. Under the "safe harbor" provision of the applicable regulations, defendants are therefore only liable for architectural barriers that failed to comply with the 1991 Standards. 28 C.F.R. § 36.304(d)(2)(i). But because defendants made architectural modifications to Wayside Lumber after plaintiffs filed this lawsuit, the court must apply the 2010 standards to determine whether those modifications have remedied the alleged ADA violations. *See id.*

even minor or technical violations of access standards are a *per se* violation of the ADA when removal is readily achievable, *Chapman,* 631 F.3d at 945. Indeed, its requirements are as "precise as they are thorough, and the difference between compliance and noncompliance with ... the ADA is often a matter of inches." *Id.* at 945–46.

### 1. *Violations of the ADA*

■ Plaintiff identifies three ADA violations that he encountered at Wayside Lumber. First, under the 1991 Standards, any business that provides parking spaces must provide handicap parking spaces. 28 C.F.R. pt. 36, App. D, § 2.2. Among other requirements, the 1991 Standards mandate that those parking spaces "shall be located on the shortest accessible route of travel from adjacent parking to an accessible entrance." *Id.* § 4.6.2. Plaintiff indicates that when he visited Wayside Lumber in June 2013, he was forced to park in a "faded parking space" that was "located across a vehicular drive path," rather than adjacent to the building. (Johnson Decl. ¶ 6.) Plaintiff has also submitted a photograph showing a faded handicap parking space located on the opposite side of the parking lot from the store entrance. (Docket No. 11–7.) Defendants have not submitted any evidence showing that the parking space complied with the ADA, and admit that "[it] is undisputed that Mr. Johnson encountered parking lot issues." (Defs.' Statement of Undisputed Facts ¶ 10 (Docket No. 14).)

Second, the 1991 Standards require that all door hardware "shall have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate." 28 C.F.R. pt. 36, App. D, § 4.13.9. When plaintiff visited Wayside Lumber in June

2013, he found that the door had a "panel style" handle that was difficult for him to grasp. (Johnson Decl. ¶ 8.) Plaintiff submits a photograph showing this door handle. (Docket No. 11–7.) As with the parking space, defendants do not submit any evidence showing that the door handles were ADA-compliant.

Finally, the 1991 Standards require that any transaction counter used for sale or distribution of goods or services to the public have a section with a maximum height of 36 inches. 28 C.F.R. pt. 36, App. D, § 7.2(1). Plaintiff states that when he visited Wayside Lumber, the transaction counter was "too high." (Johnson Decl. ¶ 9.) Leiter subsequently visited Wayside Lumber on July 23, 2013, took measurements, and determined that the entire length of the transaction counter measured between 42 and 45 inches in height. (Leiter Decl. ¶ 8.) When Leiter returned to Wayside Lumber on May 29, 2014, he found that the counters were no lower than 42 inches in height. (*Id.* ¶ 11.) Although the parties dispute whether defendants have remedied the barrier presented by the transaction counter, *see infra* II.A.2, defendants do not submit any evidence showing that the counter height complied with the 1991 Standards on either of plaintiff's two visits to Wayside Lumber in June 2013.

The Department of Justice has promulgated a regulation in which it lists removal of all three barriers—inadequate handicapped parking, unlawful door hardware, and an excessively high transaction counter—as "examples of steps to remove barriers." 28 C.F.R. §§ 36.304(b)(3), (11), (18). Whether or not that regulation establishes a presumption that those forms of barrier removal are readily achievable,[4]

---

**4.** While plaintiff asserts that "[t]he barriers in this case are on the list of barriers the Depart-

ment of Justice has identified as presumably readily achievable to remove," (Pl.'s Mem. at

plaintiff contends that removal was readily achievable because defendants actually removed the barriers. Leiter returned to Wayside Lumber on May 29, 2014, and conducted another site inspection. (Leiter Decl. ¶ 10.) During that inspection, he noted that defendants had designated two spots adjacent to the entrance as disabled parking spaces and had installed U-shaped handles on the front door. (*Id.*) Plaintiff has submitted photographs documenting these changes. (Docket No. 11–8.)

Defendants do not deny that they made these changes; to the contrary, McVey avers that the parking area and door hardware "were corrected and made ADA compliant" within thirty days after being served with this lawsuit. (McVey Decl. ¶ 4.) Because defendants were able to alter their facility to comply with the ADA within a month, there is no genuine dispute that the changes it implemented were "readily achievable." *See Wilson v. Pier 1 Imps. (US), Inc.,* 439 F.Supp.2d 1054, 1069 (E.D.Cal.2006) (Karlton, J.) ("Given that the barrier has already been cured, the court must find that [removal] was readily achievable, and thus that it violated the ADA. . . ."). Accordingly, plaintiff has demonstrated that defendants failed to comply with the ADA.

### 2. *Equivalent Facilitation*

▪ Under the ADA and its implementing regulations, the only remedies available to a private plaintiff are injunctive relief and attorneys' fees. 42 U.S.C. § 12188(a); 28 C.F.R. §§ 36.501, 36.505; *Antoninetti v. Chipotle Mexican Grill, Inc.,* 643 F.3d 1165, 1174 (9th Cir.2010) ("Injunctive relief is the sole remedy avail-

able to private parties under the [Americans with] Disabilities Act; it does not authorize a claim for money damages."). "Because a private plaintiff can sue only for injunctive relief (i.e. for removal of the barrier) under the ADA, a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim." *Oliver v. Ralphs Grocery Co.,* 654 F.3d 903, 905 (9th Cir.2011); *accord Hubbard v. 7–Eleven, Inc.,* 433 F.Supp.2d 1134, 1145 (S.D.Cal.2006).

As explained above, defendants made several changes to Wayside Lumber after plaintiff filed this action: they re-painted the parking lot, installed new door hardware, and established a separate area of the transaction counter with clipboards and distinctive signage for disabled patrons. (McVey Decl. ¶¶ 4–6.) As a result of these changes, defendants contend that plaintiff's ADA claim is moot; because they have already made Wayside Lumber ADA-compliant, defendants argue, there is no need for injunctive relief to compel compliance. Plaintiff concedes that defendants' parking lot and door handles now comply with the ADA, but disputes that the transaction counter is ADA-compliant. (*See* Pl.'s Mem. at 8 (Docket No. 11–1); Leiter Decl. ¶ 11.)

Plaintiff's principal support for this claim consists of a declaration in which Leiter documents a site inspection he conducted on May 29, 2014. (Leiter Decl. ¶¶ 10–11.) When Leiter returned to Wayside Lumber that day, he noted that the "transaction counters inside the store . . . are still no lower than 42 inches in height," and that "[t]here are no lowered, 36 inch high transaction counters." (*Id.* ¶ 11.)

---

8:24–25), plaintiff cites no authority in support of this reading of the regulation. To the contrary, at least one court has held that this regulation establishes no such presumption. *Mannick v. Kaiser Found. Health Plan, Inc.,* Civ. No. 03–5905 PJH, 2006 WL 2168877, at

*9 (N.D.Cal. July 31, 2006). Because the court determines that the removal of the barriers was readily achievable on other grounds, it need not decide whether the regulation establishes a presumption that these forms of barrier removal are readily achievable.

Plaintiff also submits photographs taken by Leiter, none of which show a lowered transaction counter. (Docket No. 11–8.)

In response, defendants offer a declaration from Kevin McVey, the general manager of Wayside Lumber, and six photographs of the transaction counter. According to McVey, defendants established an area of the transaction counter for use by disabled patrons within thirty days of being served with the complaint in this action. (McVey Decl. ¶ 6 (Docket No. 14–2).) That area contains two blue signs with the handicap-accessible symbol and the message "WE ARE PLEASED TO PROVIDE ASSISTANCE IF YOU NEED HELP PLEASE ASK" in white letters. (Docket No. 14–3.) That area also contains a clipboard with the label "ADA" on it. (*Id.*) McVey indicates that he has instructed all employees to ensure that disabled patrons have complete access to this area of the transaction counter and are offered use of the clipboard. (McVey Decl. ¶ 6.) While defendants concede that they have not installed a lowered transaction counter, they contend that these changes satisfy the ADAAG's "equivalent facilitation" provision and therefore comply with the ADA.

The "equivalent facilitation" provision of the 2010 Standards provides that "[n]othing in these requirements prevents the use of designs, products, or technologies as alternatives to those prescribes, provided they result in substantially equivalent or greater accessibility and usability." 28 C.F.R. part 1191, app. B. Relying on several cases from district courts in California, defendants contend that the use of a clipboard for disabled patrons is an acceptable substitute for lowered counters under the ADAAG or its state-law analogues. *See, e.g., Lieber v. Macy's W., Inc.,* 80 F.Supp.2d 1065, 1075 (N.D.Cal.1999) (ADAAG); *Kohler v. Presidio Int'l, Inc.,*

Civ. No. 10–4680 PSG PJWx, 2013 WL 1246801, at *10 (C.D.Cal. Mar. 25, 2013) (Title 24 of the California Health & Safety Code); *Shimozono v. May Dep't Stores Co.,* Civ. No. 00–4261 WJR AJWx, 2002 WL 34373490, at *16 (C.D.Cal. Nov. 20, 2002).

That line of cases appears inconsistent with DOJ's position that the use of a clip board in lieu of lowered counters is permitted only "until more permanent changes can be made." U.S. Dep't of Justice, *ADA Update: a Primer for Small Business* 15 (2011). DOJ expressed this view in a technical assistance manual, which it promulgated pursuant to its statutory obligation to "provi[de] appropriate technical assistance manuals to individuals or entities with rights or duties" under the Americans with Disabilities Act. 42 U.S.C. § 12206(c)(3). Its view in this manual, which purports to interpret the 2010 ADAAG, is substantially identical to one in a similar manual interpreting the 1991 ADAAG. *See* U.S. Dep't of Justice, *Americans with Disabilities Act: ADA Guide for Small Businesses* 11 (1999) ("If you cannot provide an accessible sales or service counter or auxiliary counter nearby … you may provide a clip board or lap board for use until a more permanent solution can be implemented.").

As the Ninth Circuit has made clear, positions taken by DOJ in technical assistance manuals that purport to interpret the ADAAG are "entitled to substantial deference" and "will be disregarded only if plainly erroneous or inconsistent with the regulation." *Miller v. Cal. Speedway Corp.,* 536 F.3d 1020, 1028 (9th Cir.2008) (holding that ADA technical manual setting forth guidelines governing lines of sight at sporting events was entitled to deference); *Botosan v. Paul McNally Realty,* 216 F.3d 827, 834 (9th Cir.2000) (holding that ADA technical manual set-

ting forth guidelines on ADA compliance obligations in the context of commercial leases was entitled to deference); *see generally Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) (describing level of deference accorded to agency interpretations of their own regulations). In the absence of any indication that the position adopted by DOJ in this manual is inconsistent with the ADAAG or any other regulation, the court must defer to DOJ's view that a clipboard is appropriate only as a temporary measure and is *ipso facto* not an equivalent facilitation.[5] *See Miller,* 536 F.3d at 1028.

In short, there is no genuine dispute that defendants failed to comply with the ADA and that plaintiff encountered at least three discrete ADA violations when he visited Wayside Lumber. There is also no genuine dispute that defendants have failed to install an ADA-compliant transaction counter; to the extent that defendants claim they need not do so, that position is based on a line of cases that is not binding upon this court and is inconsistent with DOJ's consistent interpretation of the ADAAG. *See id.* Accordingly, the court must grant plaintiff's motion for summary judgment on his ADA claim.

### B. *Unruh Civil Rights Act*

■ The UCRA provides, in relevant part, that every person is "entitled to the full and equal accommodations, advantages, privileges, or services in all business establishments of every kind whatsoever" notwithstanding his or her disability. Cal. Civ.Code. § 51(b). The UCRA "incorporates the substantive standards of the ADA and creates a private right of action as a matter of state law." *Dep't of Fair Emp't & Hous. v. Law School Admission Council Inc.,* 896 F.Supp.2d 849, 865 (N.D.Cal.2012); Cal. Civ.Code § 51(f) ("A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 ... shall also constitute a violation of this section.").

■ Unlike the ADA, however, the UCRA permits plaintiffs aggrieved by barriers to access to recover damages. Cal. Civ.Code § 52(a); *Munson v. Del Taco, Inc.,* 46 Cal.4th 661, 669, 94 Cal.Rptr.3d 685, 208 P.3d 623 (2009). And even if a defendant has removed barriers to access and thereby mooted the plaintiff's ADA

---

**5.** At oral argument, defendants' attorney suggested that the court should defer instead to those district courts that have concluded that a clipboard constitutes equivalent facilitation. Unlike the decisions of the Supreme Court and the Ninth Circuit, those decisions are not binding on this court. *See NASD Dispute Resolution, Inc. v. Judicial Council of Cal.,* 488 F.3d 1065, 1069 (9th Cir.2007).

Even if they were, however, it is not at all clear that they would trump the position expressed in this technical assistance document. The Supreme Court has held that a "court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Nat'l Cable & Telecomms. Ass'n v. Brand X*

*Internet Servs.,* 545 U.S. 967, 982, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005). By its own terms, *Brand X* only addresses the degree of deference owed to agencies' *statutory* interpretations, and does not dictate that an agency's interpretation of its own *regulations* would supersede a contrary judicial construction of that regulation. But while neither the Supreme Court nor the Ninth Circuit have expressly addressed whether *Brand X's* holding is applicable to interpretive rules or guidance documents, at least two judges of the Ninth Circuit have suggested that "there is 'no reason why these principles should not apply equally to the interpretation of a regulation.'" *Shahinyan v. Holder,* 518 Fed.Appx. 545, 547 (9th Cir.2013) (Ikuta, J., specially concurring) (quoting *Levy v. Sterling Holding Co.,* 544 F.3d 493, 502 (3d Cir.2008)).

claim, those remedial measures will not moot a UCRA claim for damages. *Wilson,* 439 F.Supp.2d at 1069 (citing *Grove v. De La Cruz,* 407 F.Supp.2d 1126, 1131 (C.D.Cal.2005)).

As the court has explained, *see supra* II.A.1, there is no dispute that plaintiff encountered architectural barriers at Wayside Lumber that violated the standards set forth by the ADAAG. There is also no dispute that removal of these barriers was readily achievable. Plaintiff has therefore demonstrated that defendants violated the ADA, *see Chapman,* 631 F.3d at 945, and, by extension, the UCRA, *see* Cal. Civ.Code § 51(f).

The UCRA ordinarily provides for minimum statutory damages of $4,000 for each occasion on which a plaintiff encountered one or more barriers to access. *Id.* § 52(a). Because plaintiff made two visits to Wayside Lumber, he contends that he is entitled to an award of $8,000 in damages. However, plaintiff has also asserted a claim under the California Disabled Persons Act, Cal. Civ.Code. § 54.1. A plaintiff may not recover damages under both the UCRA and the Disabled Persons Act. *Id.* § 54.3(c); *Munson,* 46 Cal.4th at 675, 94 Cal.Rptr.3d 685, 208 P.3d 623. Because the court has not yet resolved plaintiff's claim under the Disabled Persons Act, it is premature to award damages under the UCRA.

Moreover, there are two factual questions related to damages that preclude summary judgment at this stage.[6] First, "in an action alleging multiple claims for the same construction-related accessibility violation on different particular occasions," California law requires the trier of fact to "consider the reasonableness of the plaintiff's conduct in light of the plaintiff's obligation, if any, to mitigate damages." Cal. Civ.Code § 55.56(h). Here, plaintiff indicates that he visited Wayside Lumber on June 4, 2013 and June 20, 2013, (Johnson Decl. ¶ 5), but provides no evidence that indicates he alerted defendants to the barriers he encountered before he made a second visit or that he expected the barriers to be removed before he returned. *See Ramirez v. Sam's for Play Café,* Civ. No. 11–1370 MEJ, 2013 WL 4428858, at *8–9 (N.D.Cal. Aug. 15, 2013) (expressing skepticism about why plaintiffs "chose to visit the Café three times in thirty days" despite the likelihood that they would continue to encounter barriers to access). Until the trier of fact is permitted to determine whether plaintiff attempted to mitigate his damages, it is premature for the court to award multiple statutory damages at this juncture. *See id.* at *9 (denying summary judgment on the issue of multiple statutory damages).

Second, it is not clear what the minimum statutory damages are. While the Unruh Act ordinarily provides for a minimum damage award of $4,000 for each visit, Cal.

**6.** Plaintiff has demanded a jury trial on "all claims for which a jury is permitted," including his UCRA claim. (Compl. at 8.) While plaintiff claims he seeks only statutory damages under the UCRA, a party's entitlement to, and the amount of, statutory damages under the UCRA are determined by the trier of fact. Cal. Civ.Code § 52(a); *see Fair Hous. Council of San Diego v. Penasquitos Casablanca Owner's Ass'n,* 523 F.Supp.2d 1164, 1177 (S.D.Cal.2007), *rev'd on other grounds,* 381 Fed.Appx. 674 (9th Cir.2010) (noting that the jury calculated and awarded statutory damages under the UCRA). And even if the amount of statutory damages was generally a question for the court to determine, the question of whether plaintiff failed to mitigate his damages or whether his conduct was reasonable are quintessential jury questions. *See, e.g., Passantino v. Johnson & Johnson Consumer Prods., Inc.,* 212 F.3d 493, 508 (9th Cir.2000) (characterizing failure to mitigate as a jury question).

982

Civ.Code § 52(a), California law reduces this award to $2,000 if a defendant corrects all construction-related violations within thirty days of being served of the complaint and is a small business with twenty-five or fewer employees and gross annual receipts of less than $3,500,000. Cal. Civ. Code. § 55.56(f)(2). Neither party has submitted any evidence that speaks to whether defendants operate such a business. The court therefore declines to assess damages; it will instead permit the trier of fact to do so after the parties have had the opportunity to present evidence on this question.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment be, and the same hereby is, GRANTED on the issues of defendants' liability under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.,* and the Unruh Civil Rights Act, Cal. Civ.Code §§ 51 *et seq.,* and DENIED on the issue of damages.